# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LAWANDA PARMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV1002 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Lawanda Parms, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (See Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 26, 28). For the reasons that follow, the Court should enter judgment for Defendant.

**PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of July 22, 2006. (Tr. 152.) After denial of the application, both initially (Tr. 63) and on reconsideration (Tr. 64), Plaintiff

requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 81). Plaintiff, her attorney, and a vocational expert ("VE") appeared at the hearing. (Tr. 23-62.) The ALJ thereafter determined that Plaintiff did not qualify as disabled within the meaning of the Act. (Tr. 9-18.) After the Appeals Council denied review of the ALJ's decision (Tr. 1-3), Plaintiff instituted an action in this Court (Tr. 702). Defendant agreed to a voluntary remand, which the Court ordered. (Tr. 703-04.)

On remand, a new ALJ conducted a new hearing, attended by Plaintiff, her attorney, and a VE. (Tr. 632-72.) The ALJ then found, again, that Plaintiff did not qualify as disabled within the meaning of the Act. (Tr. 673-82.) The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 687-90.)

In rendering that disability ruling, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2012.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of July 22, 2006[,] through her date last insured of March 31, 2012 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: cervical spondylosis, headaches, seizure disorder, carpal tunnel syndrome, obesity, and anxiety (20 CFR 404.1520(c)).

2

> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that [Plaintiff] is limited to frequent handling and fingering, no driving an automobile for completion of job tasks; and no more than moderate exposure to noise. [Plaintiff] can perform occasional climbing of ramps and stairs, occasional balancing, and frequent stooping, crouching, and crawling. She cannot climb ropes/ladders/scaffolds, and she should avoid even moderate exposure to workplace hazards. She can have occasional contact with the public, is able to perform simple, routine, repetitive tasks, and handle routine workplace changes.

(Tr. 616-19.)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that Plaintiff could not perform her past relevant work as it involved operating motor vehicles. (Tr. 622-23.) However, the ALJ found that other jobs existed at the light level with significant numbers in the national economy. (Tr. 623-24.) Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined in the Act, at any time from the alleged onset date through the date of the decision. (Tr. 624.)

3

**DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

5

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[1] A finding adverse to a claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[1] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[2] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform "past relevant work" ("PRW"); if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[3]

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[3] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

**Assignments of Error**

Plaintiff argues that the ALJ erred: (1) by "improperly evaluat[ing] the medical evidence and Plaintiff's credibility regarding the frequency, effects and causes of her seizure disorder resulting in an improper residual functional capacity" (Docket Entry 27 at 1); and (2) by "improperly evaluat[ing] Plaintiff's seizure disorder under Disability Listing 11.02[A]" (id.). Defendant contends otherwise and urges that substantial evidence supports the determination of no disability. (Docket Entry 29 at 8-15.)

**1. Plaintiff's RFC**

Plaintiff first assigns error to the ALJ's evaluation of the medical evidence and of Plaintiff's credibility regarding the frequency of her seizures in determining the RFC. (Docket Entry 27 at 1.) However, Plaintiff fails to identify any specific defects in the RFC, and, for that reason, this assignment of error fails.

As an initial matter, Plaintiff "bears the burden of establishing her impairments and the resulting limitations on her ability to perform work." Donnell v. Astrue, No. 1:09CV308, 2010 WL 3911425, at *3 (M.D.N.C. Oct. 5, 2010) (unpublished),

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

recommendation adopted, slip op. Docket Entry 14 (M.D.N.C.). In order to successfully challenge the ALJ's formulation of Plaintiff's RFC, she must explain (with supporting evidence) what other functional limitations the ALJ should have included or what the ALJ should have found as the proper RFC. See McAnally v. Astrue, 241 F. App'x. 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that, '[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.'"); Miles v. Astrue, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C. Mar. 30, 2009) (unpublished) ("[T]he plaintiff details various pieces of evidence which she contends the ALJ misconstrued . . . . The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations sufficient to eliminate the possibility that [the] plaintiff could perform the sedentary work required of her past relevant work. Accordingly, error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless.").

Here, the ALJ considered Plaintiff's seizure disorder in formulating the RFC by finding Plaintiff capable of performing light work with several exceptions. (Tr. 619; see also Tr. 622 ("[Plaintiff's seizure disorder] is considered a severe impairment

9

and limitations have been provided in the RFC.").)  Relying on the VE's testimony, the ALJ found Plaintiff capable of performing the occupations of order caller (DOT 209.667-014), dispatcher (DOT 222.587-038), and retail marker (DOT 209.587-034).  (Tr. 623.)  Each of these jobs comports with the RFC set forth by the ALJ.  (Compare Tr. 619, with DOT 209.667-014, 222.587-038, 209.587-034.)

Plaintiff argues that the ALJ erred in evaluating the medical evidence and Plaintiff's testimony in formulating the RFC. (See Docket Entry 27 at 4-9.)  However, Plaintiff fails to identify any additional limitations the ALJ should have included in setting the RFC.  (See id.)[4]  In other words, although Plaintiff criticizes the ALJ, Plaintiff does not address the ultimate question: what should the ALJ have determined as the proper RFC?  Thus, this assignment of error fails as a matter of law, particularly given that the ALJ accounted for Plaintiff's seizures in formulating the RFC (see Tr. 619 (including as part of the RFC prohibitions on driving; climbing ropes, ladders, and scaffolds; and requiring avoidance of exposure to moderate workplace hazards)).

---

[4] To the extent Plaintiff suggests that the RFC inadequately accounted for the fact that she suffers seizures despite treatment (see Docket Entry 27 at 5 (citing Tr. 668-70)), she merely re-clothes her Listing argument in RFC garb, and her argument fails for the reasons stated in the next section.

10

## 2. The Disability Listing

Plaintiff argues that the ALJ improperly evaluated Plaintiff's seizure disorder under Listing 11.02A. (See Docket Entry 27 at 10-11.)[5] Plaintiff makes three arguments on this point. (Id.) First, Plaintiff contends that the ALJ failed to substantively address the Listing by summarily denying the application. (Id.) Second, Plaintiff incorporates her argument (from her assignment of error as to the RFC) that the ALJ erred in evaluating the medical evidence and asserts that the medical evidence demonstrates that she meets Listing 11.02A. (Id. at 10.) Finally, Plaintiff incorporates her challenge to the ALJ's assessment of her credibility (again, from her discussion of the RFC). (Id.) The undersigned will address each argument in turn.

### a. Substantive Analysis of the Listing

Contrary to Plaintiff's argument (id. at 10-11), the ALJ did sufficiently consider Listing 11.02A to allow for meaningful review. The ALJ found that Plaintiff did not meet Listing 11.02A because "[Plaintiff] has been non-compliant with medication and her

---

[5] Listing 11.02 provides:
>  Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
>  A. Daytime episodes (loss of consciousness and convulsive seizures) or
>  B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Part 404, Subpart P, App. 1 § 11.02.

11

reports are subjective." (Tr. 618.) The ALJ's decision therefore rests on Plaintiff's medicinal non-compliance and the lack of objective data supporting the frequency of her seizures. The logical (and evidentiary) underpinning for that determination lies in the ALJ's discussion of Plaintiff's RFC, wherein the ALJ elaborated on the inconsistencies in Plaintiff's statements and her record of treatment non-compliance. (See Tr. 620.) Thus, the ALJ presented "findings and determinations sufficiently articulated to permit meaningful judicial review, which [] include[d] specific reference to the evidence producing [her] conclusion." Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. 1989) (unpublished) (internal quotation marks omitted).

**b. Medical Evidence**

The objective medical evidence does not support Plaintiff's argument that she meets Listing 11.02A. Plaintiff relies on her numerous hospital admissions as evidence of her seizures despite treatment. (See Docket Entry 27 at 5-6.) Plaintiff first cites a hospital admission on August, 24, 2005, where she complained of seizures. (Id. at 5 (citing Tr. 391-95).) Testing during that admission revealed a therapeutic level of her anti-convulsant (Depakote) and Plaintiff had a "seizure like activity" while in the emergency department. (Tr. 391.) Plaintiff next references a hospital admission on November 11, 2005, wherein testing revealed therapeutic levels. (Docket Entry 27 at 5 (citing Tr. 239).)

12

During that admission, "the Emergency Room (ER) attending observed generalized tonoclonic movements with some post-event confusion very suggestive of a seizure." (Tr. 239.) Plaintiff then cites to two admissions in August of 2006 wherein testing, both times, revealed therapeutic levels and Plaintiff suffered seizures during the admissions. (Docket Entry 25 at 6 (citing Tr. 294-97, 305-09).) Next, Plaintiff cites to her December 2010 hospital admissions, wherein testing again revealed therapeutic levels, and she suffered seizures during the admission. (Id. (citing Tr. 1006-08).) Finally, Plaintiff refers to her November 2011 hospital admission for seizures. (Id. at 6-7; see also Tr. 1203-04.) However, in this instance, testing revealed sub-therapeutic levels. (Tr. 1199.) These cited instances do not demonstrate that the ALJ erred in evaluating the medical evidence.

First, Plaintiff fails to note the numerous other instances where testing revealed sub-therapeutic levels of anti-convulsant or she admitted to missing doses. (See, e.g., Tr. 220, 324, 451, 455, 556, 1272.) Listing 11.02A requires a plaintiff to experience more than one seizure a month despite three months of treatment. 20 C.F.R. Part 404, Subpart P, App. 1 § 11.02. Here, the cited medical evidence reflects Plaintiff did have therapeutic-level seizures, but they occurred months - and sometimes years - apart. Moreover, with the exceptions of the time between the August 2005 and November 2005 admissions and the two August 2006 admissions,

13

Plaintiff admitted to not taking her medication or testing revealed sub-therapeutic levels between the therapeutic-level seizures. (See, e.g., Tr. 324 (June 2006 test revealed sub-therapeutic levels); Tr. 451 (in February 2010, Plaintiff admitted to discontinuing her seizure medication).) Thus, the medical evidence does not support Plaintiff's argument.

Plaintiff also contends the ALJ failed to consider whether Plaintiff did not properly absorb the medicine, thereby resulting in sub-therapeutic levels in tests. (Docket Entry 27 at 6.) However, Plaintiff fails to provide a citation to the record where she argued this point before the ALJ, so she cannot now complain of the ALJ's actions. See generally Powell v. Barnhart, 69 F. App'x 405, 408 n.1 (10th Cir. 2003) ("[G]iven the rarity of the condition in question, the speculative nature of [the plaintiff's] present suggestion that it could be the cause of his sub-therapeutic blood serum levels (particularly in the face of other evidence indicating that he did not comply with his prescribed regimen), and the failure of [the plaintiff's] counsel to ask the ALJ to pursue the matter, we do not think the ALJ erred in failing to anticipate and assist [the plaintiff's] current effort to avoid the consequences of his failure of proof under the listing."). Moreover, Plaintiff's argument relies on the assumption she took her medication as prescribed, a point that (for reasons discussed in the next subsection) the ALJ reasonably discounted.

14

Finally, as an aside, Plaintiff complains that the ALJ cannot deny benefits merely because of Plaintiff's non-compliance with treatment. (Docket Entry 27 at 7.) Plaintiff cites Dickens v. Astrue, No. 5:10-CV-535-BO, 2011 WL 3269422, at *3 (E.D.N.C. July 28, 2011) (unpublished), for support. In Dickens, the plaintiff requested DIB as a result of congestive heart failure, muscle spasms, and hypertension. Id. at *1. However, the Commissioner denied benefits as a result of her non-compliance with treatment. Id. at *3. The trial court reversed the Commissioner, finding that the ALJ failed to establish unjustified non-compliance by substantial evidence and to develop an appropriate record. Id.

Plaintiff's situation does not equate to the one in Dickens. Unlike in Dickens, as discussed in the next subsection, reasons other than non-compliance served as a basis to question Plaintiff's credibility. This case thus closely mirrors not Dickens, but the following decision where:

> [The plaintiff's] failure to take his Dilantin as prescribed prevented the ALJ from finding he had a *per se* disabling seizure disorder under [L]isting 11.02, irrespective of justifiable cause. Justifiable cause for refusing treatment generally becomes relevant only in the context of steps four and five of the five-step test, which consider a claimant's actual ability to perform work. . . . [O]nly had he actually been complying with his prescribed course of treatment for at least three months could he claim that his condition qualified as a listed impairment in spite of the treatment.

Bolden v. Commissioner of Soc. Sec., 556 F. Supp. 2d 152, 163-64 (E.D.N.Y. 2007). Like in Bolden, here, the ALJ did not rule

15

against Plaintiff on the ultimate issue of disability because of her non-compliance, but, instead, found that Plaintiff failed to meet a step 3 listing requirement because of her non-compliance.[6]

### c. Plaintiff's Credibility and Subjective Reports

The ALJ found that Plaintiff lacked credibility as to the extent of her seizures and that her self-reports of seizures qualified as subjective, so she did not meet Listing 11.02A. (Tr. 618, 622.) Plaintiff argues that "the ALJ erred in her credibility analysis by stating that Ms. Parms' seizures were only 'subjective' without objective confirmation by medical professionals." (Docket Entry 27 at 7.) This argument mischaracterizes the ALJ's findings. Although the ALJ found that Plaintiff's reporting about the frequency of her seizures qualified as "subjective" (Tr. 618, 622), the ALJ did not dispute that seizures occurred (Tr. 622 ("It should be noted that the undersigned is not stating that the claimant does not have a seizure disorder . . . .")). In other words, the ALJ simply concluded that Plaintiff's reports of seizure incidents not documented in the medical evidence qualified as subjective and unreliable.

Furthermore, Plaintiff's list of seizures confirmed by medical personnel fails to advance her position because not all of those seizures meet the requirements of Listing 11.02A. Plaintiff

---

[6] As previously noted, see footnote 3, Plaintiff still could have qualified for DIB by succeeding at steps four and five.

identifies approximately twelve hospital admissions (spread across four years) wherein medical personnel documented seizures, but, of those twelve, it appears only four occurred when she had therapeutic levels of her anti-convulsant. (See Docket Entry 27 at 7-8.)[7] As discussed in the preceding subsection, the therapeutic-level seizures typically occurred months apart and after episodes of treatment non-compliance. Plaintiff does not include any other objective evidence of therapeutic-level seizures. (See Docket Entry 27.)

As Plaintiff's objectively documented incidents of therapeutic-level seizures do not satisfy Listing 11.02A (as discussed in the previous subsection), and given that Plaintiff cites no other objective evidence of seizures, Plaintiff must rely on her own testimony of the frequency of seizures. However, proof of seizures at the required frequency demands more than a plaintiff's own testimony. See Wimmer v. Astrue, No. 3:10-cv-05370-KLS, 2011 WL 761556, at *7 (W.D. Wash. Feb. 25, 2011) (unpublished) ("[A] finding [of disability under Listings 11.02 or 11.03] may not be based merely on a claimant's claim that his or her seizures have occurred at the required rate, without any actual documentation in the record, particularly where, as in this case, the ALJ properly discounts the claimant's credibility regarding his

---

[7] Plaintiff failed to note that the December 2010 hospital admission also occurred with therapeutic levels. (Tr. 1008).

symptoms and limitations."); see also Kliber v. Social Sec. Admin., 794 F. Supp. 2d 1025, 1041 (D. Minn. 2011) (refusing to credit a plaintiff's self-report of seizures); Dakin v. Astrue, No. 08-0794-CV-W-REL-SSA, 2010 WL 1253632, at *26 (W.D. Mo. Mar. 31, 2010) (unpublished) ("The [L]isting requires either that a doctor witness the seizures or a person other than the claimant testify about the seizures."). Even if Plaintiff's subjective reports of seizures could suffice as a basis for finding Plaintiff met Listing 11.02A, the ALJ found Plaintiff lacked credibility and did not credit her reports of the frequency of seizures (Tr. 620, 622).

The ALJ doubted Plaintiff's credibility as a result of Plaintiff's own statements and actions. In particular, the ALJ noted inconsistencies in Plaintiff's testimony and past statements. (Tr. 620.) First, at the hearing, Plaintiff claimed to suffer at least two to three seizures per week since onset of July 22, 2006, but, in July of 2007, she told her physician that she had not had a seizure in almost a year and wanted to return to work. (Id.) Second, the ALJ observed that Plaintiff had, at least once, reported complying with her treatment, but subsequent testing revealed sub-therapeutic levels. (Id.) Third, Plaintiff reported, in April of 2012, that she had been unable to obtain her medication for at least a month, but at the hearing (approximately three

18

months later) claimed recent compliance with her treatment. (Id.)[8] Fourth, the ALJ noted that, although Plaintiff claimed to suffer from left-side weakness and used a cane, "little if any documentation of such a limitation [exists] in the medical evidence of record." (Tr. 620). The ALJ further relied on an April 2012 appointment with her neurologist, wherein, the neurologist noted Plaintiff had normal sensation, motor exam, coordination, balance, gait, and stance. (Tr. 620-21; see also Tr. 1272-74.)

The ALJ also concluded that Plaintiff's actions did not match the severity of her complaints. (Tr. 620.) For example, the ALJ noted that Plaintiff stated that her non-compliance with medication resulted from financial hardship, but when provided with information regarding methods to obtain medication, she did not appear to take any action. (Id.) Further, the ALJ found Plaintiff's everyday activities inconsistent with her claimed limitations. (See Tr. 621).[9] The ALJ determined that Plaintiff's overall level of non-compliance contradicted "the degree of disabling seizure[s] . . . [Plaintiff] alleges." (Tr. 620) Thus,

---

[8] Contrary to Plaintiff's argument (Docket Entry 27 at 7), an ALJ may consider non-compliance in assessing credibility, see Myers v. Commissioner of Social Sec. Admin., 456 F. App'x 230, 232 (4th Cir. 2011).

[9] Plaintiff mischaracterizes the ALJ's analysis of Plaintiff's everyday activities. Plaintiff claims that the ALJ relied on Plaintiff's everyday activities as proof of her ability to work. (See Docket Entry 27 at 9 ("[The ALJ's] claim that [Plaintiff's] custody of her grandchildren demonstrates that she is capable of work activity is equally erroneous.").) However, as Defendant points out (Docket Entry 29 at 14), the ALJ did not rely on her everyday activities as proof of her ability to work, but, instead, noted that those activities appeared inconsistent with her claimed limitations (Tr. 621).

19

Plaintiff's actions and inconsistencies provided the ALJ with sufficient grounds to question Plaintiff's credibility.

Because the record contains substantial evidence to support the ALJ's treatment of Plaintiff's medical history and her credibility in evaluating the Listing, the Court should reject Plaintiff's second assignment of error.[10]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 26) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 28) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 13, 2015

---

[10] Plaintiff also contends that the ALJ failed to take the December 2008 EEG into account despite a specific order from this Court to do so. (See Docket Entry 27 at 9.) However, Plaintiff fails to develop this argument, and, in particular, to show how any error affected the outcome of the case. (Id.) The Court need not address such perfunctory arguments by counsel. See Hayes v. Self-Help Credit Union, No. 1:13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (unpublished). Moreover, as Plaintiff concedes (see Docket Entry 27 at 9) the ALJ's decision expressly confirms consideration of the EEG. Finally, the ALJ did not, as Plaintiff contends, "gave [the EEG] no consideration when concluding that [Plaintiff's] seizures were only a subjective occurrence" (id.), because (for reasons discussed above) the record does not reflect that the ALJ made any such conclusion.